UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROLANDO Q. ALVARADO,

        Petitioner,

        Case No. 2:17-cv-115

v.

        Honorable Janet T. Neff

CATHERINE BAUMAN,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Rolando Q. Alvarado is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and carrying a concealed weapon, Mich. Comp. Laws § 750.227. On November 10, 2014, the court sentenced Petitioner as a habitual offender-fourth offense, to prison terms of 35 to 70 years for each conviction.

On June 22, 2017, Petitioner filed his habeas corpus petition raising one ground for relief, as follows:

> Petitioner was denied his right to effective assistance of counsel [due] to his failure to impeach the prosecution['s] main witness.

(Pet., ECF No. 1, PageID.6.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the petition should be denied because it is meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214

(AEDPA), I find that Petitioner's challenge to his convictions is meritless. Accordingly, I recommend that the petition be denied.

On February 3, 2014, Petitioner stabbed his former friend and housemate Michael Price several times. Price survived. Petitioner was charged with assault with intent to murder (AWIM). There was no real dispute that Petitioner stabbed Michael Price. Petitioner's defense was that he did not intend to kill Price.

According to Price, there were three distinct instances where Petitioner stabbed him. In chronological order, Petitioner stabbed Price in the gut while the two were in the house as Price was ushering Petitioner to and out the door, Petitioner stabbed Price in the back twice when Price was at the bottom of the porch steps turning to go back into the house, and Petitioner stabbed Price again several times after Price had fallen near the front gate following an errant swing of a baseball bat at Petitioner. Price had connected with his first swing, hitting Petitioner in the leg.

A cable salesman, Roosevelt Beasley, was nearby. He saw Petitioner stabbing at Price in the doorway. He saw Petitioner stabbing Price again after he fell by the gate. Beasley did not testify consistently with Price with regard to the alleged stabbing at the bottom of the porch steps. Beasley's description of the event simply did not include a confrontation at the bottom of the porch steps. Counsel seized on the inconsistencies between Price's account and Beasley's account to call into question Price's credibility.

The trial court instructed the jury with regard to the lesser included offense of assault with intent to do great bodily harm.[1] The elements of the two offenses differ only with respect to the perpetrator's intent. One factual circumstance that might warrant a determination of guilt on the lesser charge is adequate provocation. The jury deliberated for several hours, but

---

[1] The court also instructed the jury with regard to Petitioner's claim that he acted in self-defense.

2

ultimately returned verdicts of guilty on the crimes as charged.

Petitioner, with the assistance of counsel, directly appealed his convictions raising the same issue he raises in this Court. Petitioner contends that his counsel rendered ineffective assistance because he did not further impeach Price with his prior statements to police, which omitted the stabbings at the bottom of the porch steps, or the medical record, which evidenced significant injuries, but certainly less significant than Price claimed on the stand. Petitioner claims that by further calling into question the existence of the "porch steps" stabbing, the jury would have likely concluded that he was guilty of only the lesser charge because the initial stabbing in the house did not evidence an intent to kill and the later stabbing at the gate was provoked.

Petitioner asked the court of appeals to remand the case back to the trial court for the purpose of conducting a *Ginther* hearing.[2] To support his request, Petitioner submitted an offer of proof indicating that appellate counsel had discussed the alleged ineffective assistance with trial counsel and trial counsel could not adequately explain his failure to further impeach Price with Price's statements to police or the medical record. (Offer of Proof, ECF No. 9-10, PageID.300.) Petitioner also provided excerpts from the relevant police report and the victim's medical record. (*Id.*, PageID.301-302.) The court of appeals denied relief, concluding that further factual development was unnecessary. (Mich. Ct. App. Order, ECF No. 9-10, PageID.303.)

The Michigan Court of Appeals rejected Petitioner's claim by unpublished opinion issued March 8, 2016. (Mich. Ct. App. Op, ECF No. 9-10, PageID.269-272.) Even though the materials contained in Petitioner's offer of proof were not part of the lower court record, the appellate court considered them in rejecting Petitioner's claim. (*Id.*, PageID.271.) Petitioner,

---

[2] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record. For that reason, evidentiary hearings regarding ineffective assistance of counsel are typically referred to as *Ginther* hearings.

again with the assistance of counsel, then filed an application for leave to appeal in the Michigan Supreme Court raising the same issue. (Appl. for Leave to Appeal, ECF No. 9-11, PageID.350.) The supreme court denied leave by order entered September 6, 2016. (Mich. Order, ECF No. 9-11, PageID.346.)

Petitioner then filed his habeas petition in this Court.

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.

4

*Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court

established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish such a claim Petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*,

562 U.S. at 102).

To resolve Petitioner's claim, the Michigan Court of Appeals applied the following standard:

> To establish ineffective assistance of counsel, defendant must show:
>
> (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. [*People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).]
>
> "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). In ruling on claims of ineffective assistance of counsel, we affirmatively consider the range of possible reasons that defense counsel may have proceeded as he did. *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). This Court "will not substitute our judgment for that of defendant's counsel, nor will we use the benefit of hindsight to assess counsel's performance." *People v Unger (On Remand)*, 278 Mich App 210, 258; 749 NW2d 272 (2008). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak,* 263 Mich App 42, 61; 687 NW2d 342 (2004). However, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446, 465 (2014).

(Mich. Ct. App. Op., ECF No. 9-10, PageID.270-271.) The standard applied is entirely consistent with *Strickland*, even though it relies on state case authority.

The court of appeals applied the standard as follows:

> Our review of the record reveals that defense counsel's cross-examination of Price was adequate to develop defendant's defense that Price was not credible and that defendant did not have the intent to murder the victim. *Lane*, 308 Mich App at 68. Defense counsel questioned Price about the stabbing that Price claimed to have occurred at the bottom of the porch. Toward the end of defense counsel's cross-examination, defense counsel asked Price whether he knew there was an eyewitness to the attack; Price responded that he did not. Defense counsel's trial strategy was clearly to show that Price was not credible. Questioning Price on his recollection to firmly establish his version of the events, and cross-examining the eyewitness regarding discrepancies with Price's account, in an attempt to impeach Price, was sound trial strategy for defense counsel even though it did not work. *Matuszak*, 263

7

>Mich App at 61.  Defense counsel's conduct in attempting to impeach Price was not objectively unreasonable.  *Lane*, 308 Mich App at 68.  Although defendant argues that the police report contained additional information that defense counsel could have used to further impeach Price, counsel is not ineffective in failing to exhaustively impeach a witness on every conceivable point; rather, defense counsel was required to develop defendant's defense by adequately impeaching the witnesses against him.  *Lane*, 308 Mich App at 68.  Moreover, by not questioning Price about his statements to Forner, defense counsel did not risk being seen as bullying Price about a statement he had made in the hospital after receiving surgery to repair the life-threatening injuries he had sustained.  This strategy was within the range of possible reasons that defense counsel may have acted as he did.  *Gioglio (On Remand)*, 296 Mich App at 22.  Therefore, defendant cannot demonstrate that failing to explicitly impeach Price using statements contained in the police report, rather than relying on his impeachment through the eyewitness's testimony, was not sound trial strategy.  *Trakhtenberg*, 493 Mich at 51.
>
>Defendant's argument that defense counsel was ineffective in failing to impeach Price about the length of his hospitalization, or about Price's statement that he saw the tip of the knife protruding from his chest, as reflected in the medical records, is also without merit.  First, defendant makes no showing that those portions of the hospital records were admissible at trial, as the length of Price's hospitalization and whether he could see the knife's tip protrude from his chest, arguably were not "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.  Second, even assuming the hospital records could have been admitted at least for impeachment purposes, MRE 613(b), nothing in the records attached to defendant's motion to remand or brief on appeal supports defendant's contention that Price was hospitalized for less than one month (as defendant suggests), or that Price could not have seen the tip of the knife protruding from his chest.  Additionally, because the hospital records contain numerous statements regarding the seriousness of Price's injuries and the fact that he had sustained several serious wounds to his back, it was sound trial strategy for defense counsel not to provide the jury with additional evidence of Price's injuries.  *Gioglio (On Remand)*, 296 Mich App at 22.  Therefore, defendant has failed to establish that defense counsel was deficient in this regard so as to overcome the presumption of effective assistance of counsel.  *Lockett*, 295 Mich App at 187.

(Mich. Ct. App. Op., ECF No. 9-10, PageID.271-272.)

The court of appeals analysis is not unreasonable.  Nothing more is required to satisfy *Strickland*'s deferential standard of review.

Moreover, the record strongly supports the court's analysis.  Petitioner's argument understates the effectiveness of trial counsel's impeachment effort.  The prosecutor clearly

recognized that Petitioner's trial counsel had called into question Price's credibility by highlighting important differences between the accounts of Price and Beasley. During the prosecutor's closing argument, he attempted to diminish the significance of those differences as brought out by Petitioner's counsel's cross-examinations of the witnesses. (Trial Tr. III, ECF No. 9-6, PageID.247-249, 253-254.) The prosecutor also argued to the jury that Price's perhaps overly dramatic statements regarding his injuries were understandable. (*Id.*, PageID.247-248.) That argument also evidences that Petitioner's counsel had succeeded in emphasizing that point through his cross-examination of Price and the first responders.

Petitioner's argument also overstates the benefit of further impeaching Price with either the police report or the hospital records. Petitioner's trial counsel attempted to divide the incident into three parts: the stab to the gut inside the house, which he contended was not serious enough to evidence an intent to kill, only an intent to harm; the stab(s) to the back at the bottom of the steps; and the stabs as Petitioner was on top of his prone victim, which were provoked and for that reason could not evidence an intent to murder. If Beasley's testimony was credited over Price's with respect to the attack at the bottom of the steps, counsel could limit the assaults to circumstances where an argument for the lesser charge was at least feasible. Presenting the police report, however, though helpful for its impact on the credibility of Price's "bottom of the stairs" testimony, presented an "at the gate" scenario that detracted from Petitioner's argument that the stabbings there were provoked.

Beasley's testimony suggests that Price was helpless on the ground as Petitioner was on top of Price stabbing him. (Trial Tr. III, ECF No. 9-6, PageID.214-215.) Price's statement to police presented the same picture. (Offer of Proof, ECF No. 9-10, PageID.301.) Price's testimony at trial, however, suggested an uninterrupted physical battle, with both parties landing

9

blows, from the first swing of the bat to Petitioner inexplicably walking away.  (Trial Tr. II, ECF No. 9-5, PageID.186.)  Price's trial testimony strengthened Petitioner's provocation claim.  That is a reasonable argument that supports a strategic decision to forego additional impeachment of Price regarding the "bottom of the stairs" attack using the police report.  That reasonable argument also forecloses Petitioner's ineffective assistance claim.

The record also supports the court of appeals' analysis regarding the hospital records.  Petitioner claimed that his trial counsel should have used hospital records to impeach Price with regard to the length of his hospital stay—Price testified it lasted a month, Petitioner says the medical records show it was only a week—and the absence of any stab wound that completely penetrated Price's body from back to front as Price described.  But, Petitioner's trial counsel did not fail to explore the issue of Price's credibility as to his wounds.  He followed Price's lead.  On direct examination, Price testified "I was smothered in blood.  Blood was pumping out of me like a broken hose . . . ."  (Trial Tr. II, ECF No. 9-5, PageID.186.)  On cross-examination, Price testified: "I was smothered in blood . . . . There was blood everywhere. . . . There was blood all over me."  (*Id.*, PageID.193.)  A first-responder, however, testified "There was very little blood, actually . . . ."  (*Id.*, PageID.197.)

Although Petitioner contends that the hospital records demonstrated the victim was only hospitalized for a week, Petitioner provided no documentation to the Michigan appellate courts or this Court to support that contention.  Similarly, though Petitioner contends the hospital records indicate the victim did not experience a wound where the knife entered his back and emerged through his chest—an admittedly unlikely wound to be caused by a five-inch knife—the only supporting record he provides appears to be a one-page report from the paramedics.  The trauma surgeon's testimony makes clear that the report describes the length of wounds, not the

depth of wounds. Moreover, the testimony of the trauma surgeon revealed that Petitioner's wounds, even if they did not include a wound that penetrated his entire body back to front, were significant and life-threatening. No matter how much Price exaggerated the factual circumstances of Petitioner's attack, he did not exaggerate, and counsel could never impeach, the wounds. Thus, there is ample support in the record for the court of appeals' determination that it would have been strategically imprudent to ask the jury to more closely focus on the seriousness of Price's wounds.

Petitioner has failed to demonstrate that the state appellate court's decision is based on an unreasonable determination of the facts. Petitioner has also failed to show that the state court's determination that counsel was not ineffective was contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to habeas relief.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.

Dated:   January 18, 2019                         */s/ Timothy P. Greeley*
                                                   Timothy P. Greeley
                                                   United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).